7859
## BROCK v. J. J. HALEY & CO.

1. REAL PROPERTY—LEASE—AGRICULTURAL LIEN.—The contract in question construed to create the relation of landlord and tenant and under it the tenant had the right to execute an agricultural lien on crops to be raised on the leased lands, but no crops having been planted on the leased lands under this lease, the lienee has no right to seize crops raised thereon by another tenant under a lease made after the lienor had abandoned the lands.

2. CONTRACT.—If the landlord promised to pay the lien debt as a consideration of the lienor's quitting the premises, the remedy of lienee is on the promise of the landlord and not under the lien against the crops raised by a subsequent tenant.

3. DAMAGES.—The charge here complained of substantially covers the doctrine that the damages for seizure of cotton is the difference between the highest price while under seizure and the price obtained after replevin.

4. APPEAL.—That there is no testimony to support a verdict cannot be raised for the first time in this Court.

Before SHIPP, J., Oconee, March term, 1909. Affirmed.

Action by James Brock and Charles Cox against J. J. Haley & Co., James Mason and W. M. Kay. Defendants appeal.

*Messrs. J. B. S. Dendy* and *W. C. Hughs,* for appellant, cite: *Gaines had a right to lien for supplies:* 21 S. C. 51; 15 S. C. 551; 54 S. C. 288. *Gaines had a vested interest in the crop planted on the land:* 7 How. 251; 10 S. C. 452; 8 Ency. 312. *Plaintiff is estopped from maintaining this action:* 10 S. C. 463. *Termination of tenancy:* 24 Cyc. 1028. *What is an eviction?* 24 Cyc. 1129.

*Messrs. Quattlebaum & Cochran* and *E. L. Herndon,* contra. *Mr. Herndon* cites: *The contract does not create the relation of landlord and tenant:* 40 S. C. 511; 18 Ency. 175; 15 S. C. 82, 548; 20 S. C. 1, 16. *The plaintiffs have*

*superior liens to that of lienee:* Code 1902, 3058; 79 S. C. 103. *Lien can only be created in writing:* 20 S. C. 1.

*Messrs. Quattlebaum* and *Cochran* cite: *Gaines was a laborer for a share of the crop:* 24 Cyc. 1464; 3 McC. 211; 24 S. C. 54. *Gaines' lien could only be enforced against crops raised by him:* 2 Cyc. 66; 57 Ala. 581.

April 17, 1911.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES.  This is an action for recovery of three bales of cotton and damages, and resulted in judgment in favor of plaintiff for the possession of the property and twenty-seven dollars and ninety cents damages.

James Brock was the owner of a certain tract of land in Oconee county and made with Simon Gaines the following contract, construction of which is involved in this appeal.

"State of South Carolina—Oconee County.

"An agreement made and entered into this the 3d day of January, A. D. 1907, for the year 1907, by and between B. C. Brock as agent for James Brock, witnesseth, That the said B. C. Brock, agent, agrees to rent to Simon Gaines about thirty-five to forty acres of land as has agreed upon, on the farm of James Brock near Tokeena, Oconee county, S. C., for which he, Simon Gaines, is to pay one-third of all grain crops, and one-fourth of all cotton and cottonseed, after the guano is paid for.  He also agrees to rent him sixteen (16) acres to be cultivated mostly in cotton, for which each of the parties are to have one-half after the guano bill is paid.  He also agrees to give him and family all the work possible for him to give to advantage and to pay them fifty cents per day for farm work and the customary prices for carpenter or mason work, to be paid as the work is done and to be paid in either supplies or cash.  It is understood that the said Simon Gaines is to work himself and also to put in his sons, Love, C. B., Simon, Jr., and Lela, also his wife and

her sons, T. J. Harper and Sam Harper, also Eugenia
Harper. He also agrees to enter the place and take good
care of buildings and stock entrusted to his care or use; to
prepare, plant, cultivate and gather all crops in due season
and in farm-like manner, as directed by the said B. C.
Brock, agent, and when not engaged in the preparation,
planting, cultivating or gathering of the crops, to work for
and have the hands mentioned above to work for the said
B. C. Brock, agent, at the price of 50 cents per day, or cus-
tomary prices when other than farm work is done. He also
agrees to make all necessary terraces and ditches and keep
the same in good repair during his tenery of the lands.

"Witness our hands and seal this January 3d, 1907.

                              B. C. BROCK,
                        Agent for James Brock.
                              his
                        SIMON X GAINES.
                              mark

"Witness: J. J. Haley, and J. O. B. Haley."

Gaines went into occupancy of the land and soon there-
after, on January 2d, 1907, executed to J. J. Haley & Co.
an agricultural lien on his crops to be grown on the Brock
land during the year 1907. Some preparation was made by
Gaines towards making a crop, he testifying that he had
prepared and planted five acres in corn, that he had broken
up about fifteen acres for cotton and had put down fourteen
sacks of fertilizers, and had also broken up the new ground,
containing some four or five acres. There was dispute as
to the extent and character of the work claimed to have been
done by Gaines, but there was no evidence and it is not con-
tended that any cotton was planted or cultivated by him, nor
does it appear that he furnished the fertilizer put down by
him on the cotton land. About the 1st of April, Brock
indicted Gaines for violation of his contract and as a result
Gaines agreed to move off the place. Defendant Haley knew
of this arrangement and furnished a wagon to aid in the

removal to another plantation and entered into another contract to supply Gaines, but he testified that Brock agreed to pay the lien. Plaintiff objected to this last testimony of an agreement not in writing to pay the debt of another, as obnoxious to the statute of frauds.

The Court first took this view, but finally ruled the testimany irrelevant as not affecting the question of right of possession of the property and that plaintiff's remedy was to sue upon the promise.

After Gaines left, Brock made a contract with his coplaintiff Cox, who took possession of the premises and made a crop thereon. On October 25, 1907, upon an affidavit that Gaines was disposing of the crop raised by him on said Brock land, defendant Haley & Co. procured a warrant of attachment and seized three bales of cotton grown by Cox on the Brock land, and thereupon plaintiff brought this suit to recover the cotton and damages; and succeeded over the defense made by defendants, justifying the seizure under the warrant upon the agricultural lien given by Gaines.

The first question presented is the construction of the above contract. We agree with the Circuit Court that it creates the relation of landlord and tenant and is not a mere contract for labor under the control and direction of the land owner. Brock, the owner, expressly agrees to rent the land to Gaines and Gaines expressly agrees to pay the specified portion of the crops. It is true Gaines agrees to prepare, plant, cultivate and gather all crops, etc., as directed by Brock, but that is not necessarily inconsistent with a tenancy, as all parties may have regarded it important for the tenant to have the advice and direction of the landlord. That the parties themselves regarded the contract as one of tenancy is manifest from the declaration and conduct of both. Under this construction it was competent at that time for Gaines to give an agricultural lien on the crops to be grown by him on the land, but this cannot avail defendants as the lien could only be upon the crops

cultivated by or under the lienor on the land leased and the undisputed evidence is that neither Gaines, nor any one under his lease, planted or cultivated the crop of cotton grown upon the land.

The jury were, therefore, correctly instructed: "If Simon Gaines deserted the premises and did not plant the cotton, then those proceedings would not justify them in taking the cotton. If you find that Simon Gaines did not raise the cotton, but deserted the premises before planting the cotton, then it would be your duty to bring in a verdict for the plaintiffs, with or without damages." As there is no possible theory of the testimony and the law applicable thereto which would justify the seizure of plaintiffs' cotton under a warrant upon the agricultural lien against Simon Gaines, who neither planted nor cultivated the cotton and had abandoned all right in the land as tenant at that time, we do not deem it important or necessary to consider the exceptions in detail or at length. A number of the exceptions complain of the failure of the Court to charge certain propositions, but they must fail, because the law governing the case was correctly given as a whole and there were no requests to charge refused which should have been given to the jury.

As plaintiffs were owners of the cotton and did not sign the agricultural lien there is no basis in the case to contend that they are estopped to resist the seizure under the lien. If Brock agreed to pay Haley the amount of the lien as a part of the arrangement whereby Gaines gave up the tenancy, Haley's remedy, if any, would not be under the lien to seize Brock's property, but upon the agreement. It is not material in this case to consider whether such agreement is obnoxious to the statute of frauds. As there was nothing to show that defendants had any interest in the cotton as owners, the Court properly refused to instruct the jury according to defendants' fourth request based on the theory of a tenancy in common. With

respect to the exceptions to the rulings as to the admissibility of testimony we find no prejudicial error.

With respect to the measure of damages the Court charged: "The measure of damages would be the difference in the price of cotton when they took it out of the possession of plaintiffs and when it was returned to the plaintiffs. If the price of cotton rose in the meantime and plaintiffs could have gotten more for the cotton, then the actual damage would be what they could have gotten for the cotton—the difference between what they could have gotten for it and what they received for it."

The contention is that the true measure of damages is the difference between the highest price that the cotton could have been sold for between the time of seizure by defendants and the time it was retaken and actually sold by plaintiffs. It is further contended under this exception that there was no testimony to show that cotton was any higher during he time of seizure than the price for which it was actually sold. We do not see any such substantial difference between the charge as given and the contention of appellant as to what should have been given, to justify reversal. The contention that there was no testimony to support the verdict for damages cannot be made for the first time in this Court.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.